# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| **Olanda Tyler**     ) | **Case No. 2:14-cv-4755-JMC-MGB** |
|                       ) | |
| **Claimant,**        ) | |
|                       ) | |
| v.                    ) | |
|                       ) | **REPORT AND RECOMMENDATION** |
| **Commissioner, Social Security Admin.,** ) | |
|                       ) | |
| **Defendant.**       ) | |
| _____ ) | |

Claimant Olanda Tyler, through counsel, seeks judicial review of an unfavorable final administrative decision denying benefits on her applications for a period of disability and disability benefits ("DIB") and Supplemental Security Income ("SSI") pursuant the Social Security Act ("SSA"). See Section 205(g) of the SSA, as amended, 42 U.S.C. § 405(g). The matter was referred to the assigned Magistrate Judge for review pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.) and 28 U.S.C. § 636(b)(1)(B). Having carefully considered the parties' pleadings and briefs, the administrative record, and applicable authority, the Magistrate Judge recommends that the Commissioner's final decision be **remanded** pursuant to sentence four, based on the following proposed findings of fact and conclusions of law:

## I. Relevant Statutory Law

The SSA provides that disability benefits are available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are disabled within the meaning of the statute. 42 U.S.C. § 423(a). The "claimant for disability benefits bears the burden of proving a disability." *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). Under the SSA, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations set forth a five-step sequential process that considers a claimant's age, education, and work experience in addition to the claimant's medical condition. 20 C.F.R. §§ 404.1520(a). To be entitled to benefits, the claimant "(1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity ["RFC"] to (4) perform [the claimant's] past work or (5) any other work." *Albright v. Comm'r*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The claimant bears the burden of production and persuasion through the fourth step. If the claimant reaches step five, the burden shifts to the government to provide evidence that other work exists in significant numbers in the national economy that the claimant can do. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*).[1]

## II. Background

The relevant facts have been extensively set forth in the ALJ's decision (and in the parties' briefs) and need only be summarized here: Claimant was born August 12, 1973 (a "younger" individual), lives with her two children and her mother, communicates in English, has a high school education, and has a driver's license. (AR 18, 32). She has past relevant work experience as a security guard ("light, semi-skilled," DOT #372.667-034) from 1997 to 2011. (AR 21). She also indicates she worked as a hair dresser from 1993-1997. (AR 173).

---

[1] "The burden of persuasion ... to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004); *see also Plummer v. Astrue*, 2011 WL 7938431, *5 (W.D.N.C. Sept. 26, 2011), *adopted by*, 2012 WL 1858844 (May 22, 2102), *aff'd*, 487 F. App'x 795 (4th Cir. 2012).

On October 4, 2011, the Claimant (at age 37) filed for disability benefits, alleging that she was disabled as of June 11, 2011 due to "asthma, carpal tunnel, lupus, multiple sclerosis ("MS"), and high blood pressure" (AR 19, 138-150, 182). In her disability report (dated 1/24/2012) and at the administrative hearing (May 10, 2013), she also complained of back pain, eye pain, sleep apnea, fatigue, "urinary urgency," ankle swelling, neuropathy, and drowsiness from "muscle relaxer" medication. (AR 31, 34, 39, 190, 198).[2] The Claimant alleges that she has some balance issues, sometimes uses a cane (although no doctor has indicated that she needs one), and that her feet and legs often feel "heavy." (AR 18, 36-39).[3]

After applying for disability benefits, the Claimant admittedly received unemployment benefits from the 4th quarter of 2011 until the first quarter of 2013. (AR 16, 33, Ex. 4D). At the hearing, the ALJ observed that the Claimant had been receiving unemployment benefits and appropriately asked "what kind of work did you think that perhaps you could do at that time?" The Claimant responded "Maybe health care, home health care." (AR 33).[4]

For her activities of daily living, the Claimant reports that she cares for her two minor children, leaves the house on her own, drives her car, picks up her children from school, does light chores (including some cooking and laundry), washes dishes, keeps appointments, goes shopping at stores, attends church, watches television, combs her daughter's hair, takes care of her own

---

[2] In her application, Claimant indicated she stands 5'8" and weighs 310 pounds. (AR 182). The medical records indicate her weight fluctuates. At the hearing, she indicated she had gained more weight. (AR 35). Doctors have repeatedly advised her to exercise and lose weight. (AR 19).

[3] The Claimant complained that, due to some loss of sensation in her feet, she "cannot tell how fast" she is driving "unless [she] pay[s] attention to the speedometer." (AR 179).

[4] The position of "home health aide" is classified as "light unskilled" work. *See, e.g., Sullivan v. Astrue,* 2009 WL 2190981, *1 (W.D.Va. July 23, 2009) (claimant could perform "simple, unskilled light work," such as working as a home health aide, and thus was not "disabled"). She indicates that "I don't think no one will hire me unless they allow sleeping on the job." (AR 214).

personal care and hygiene, and manages her own finances and legal affairs without issue. (AR 18-19, 38-39, 43, 76).

Several state agency physicians (Dr. Cleve Hutson, M.D. and Dr. S. Farkas, M.D.) reviewed the medical records and provided residual functional capacity ("RFC") assessments. (See AR 53-70, 73-96; Exs. 1A, 2A, 5A, 6A). Given that the Claimant had mentioned feeling depressed about not providing for her family, Kathleen Broughan, PhD, also reviewed the file for any mental symptoms. (Ex. 5A).[5] The Claimant's disability applications were denied initially and on reconsideration. (AR 99-105, 108-09).

Upon request, Administrative Law Judge Robert C. Allen ("ALJ") scheduled a hearing. At the hearing on May 10, 2013, the Claimant, her mother, her 11-year-old daughter, and vocational expert Robert E. Brabham, Jr. ("VE") all testified. In response to a hypothetical question that incorporated all the restrictions found credible, the VE testified that the Claimant could perform "á full range of sedentary, unskilled work." (AR 50). The ALJ also posed a second more restrictive hypothetical, but those restrictions were not found credible. (AR 51). The Claimant expressly waived her right to counsel and was not represented by counsel at the hearing.

The ALJ issued a decision, finding that the Claimant was not disabled from the alleged onset date (June 11, 2011) through the date of decision (July 19, 2013). (AR 14-22). The ALJ reviewed the medical records which repeatedly showed "musculoskeletal examinations to be essentially normal' and "sensory and motor exams were normal with no dysfunction." (AR 18). Claimant's mild MS was treated with medication which helped, and the evidence showed "no

---

[5] The state agency psychologist indicated, for purposes of the B criteria of Listing 12.04, that Claimant had only "mild" restriction of activities of daily living, no difficulties in maintaining social functioning, "mild" difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. (AR 78).

progression of MS." (AR 19). Although Claimant alleged carpal tunnel and reported occasional brief mild tremor of hands, she acknowledged it did not interfere with hand use. (*Id*.). As for asthma, "pulmonary function tests were essentially normal with no evidence of any obstruction or restriction and normal diffusion capacity." (*Id*.). With respect to her complaints of back pain, lumbar X-rays in November 2012 showed no evidence of acute process, and a spinal MRI in February 2013 showed only "mild" bulge at C4-5 and C 5-6. (AR 19, Exs. 8F, 10F).

The ALJ determined that Claimant's multiple sclerosis and obesity qualified as "severe" impairments for purposes of the SSA, but that her asthma was not a severe impairment because it did not result in any functional limitations. (AR 17, Finding 3). The ALJ found that the alleged impairments, singly or in combination, were not of listing-level severity. (Finding 4).[6] The ALJ found that the Claimant's medically determinable impairments "could reasonably be expected to produce the alleged symptoms" but that the Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (AR 19).

The ALJ considered the Claimant's functional abilities and determined that she retained the residual functional capacity ("RFC") "to perform a less than the full range of sedentary work. (Finding 5). RFC is "the most [a claimant] can do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ assigned the following postural and environmental limitations: never climb ladders, ropes, or scaffolds; only occasionally climb ramps and stairs; only occasionally balance, stoop, kneel, crouch, crawl; avoid concentrated exposure to odors, dust, grease, and fumes; and avoid all exposure to hazards, including dangerous equipment and unprotected heights. (Finding 5).[7] The ALJ gave the opinions and RFC assessments of the state agency medical

---

[6] Claimant concedes that she did not meet any Listing. (DE# 14 at 10).

[7] "Occasionally" is defined as "occurring from very little up to one-third of the time." SSR 83–10 at *5.

Page **5** of **13**

consultants "significant weight." (AR 20). See SSR 96-6p (an ALJ "must explain the weight given to the opinions [of state agency physicians and psychologists] in their decisions"). The Claimant did not submit any RFC assessments from any physician for consideration by the ALJ. See 20 C.F.R. §§ 404.1512(c), 416.912(c) (the claimant bears the responsibility of establishing RFC by showing how the impairments affect functioning).

Based on Claimant's age, education, work history, RFC, and the VE's testimony, the ALJ determined that the Claimant could not perform her past relevant work (AR 21, Finding 6). At step five, the ALJ elicited VE testimony and determined that the Claimant, within her credibly established limitations, could still perform jobs existing in significant numbers in the national economy. (Finding 10). The ALJ concluded that Claimant was not disabled during the relevant period. (Finding 11).

Claimant appealed and submitted additional records, including a check-the-box welfare form from Dr. Abu-Ata. (AR 4-5, citing Exs. 13E-15E, 11F, and 12F).[8] The Appeals Council denied further review. (AR 1-2). Thus, the ALJ's decision is the Commissioner's final decision. See 20 C.F.R. §§ 404.955, 404.981, 416.1455, 422.210(a); *Sims v. Apfel*, 530 U.S. 103, 106-107 (2000) (holding that if the Appeals Council grants review of a claim, then the decision issued by the Appeals Council is the Commissioner's "final decision;" if, however, the Appeals Council denies review, then the ALJ's opinion is the Commissioner's final decision).

---

[8] Dr. Abu-Ata checked the box indicating "the individual is unable to work…. due to multiple sclerosis." (AR 404). He indicated the Claimant had some exertional restrictions, but did not provide any explanation or refer to any clinical findings or test results on the form. (AR 404). Claimant also submitted results of a clinical evaluation by Dr. William Felmly, M.D., of Moore Orthopedics. (AR 407, Ex. 12F, dated 8/12/2013). Dr. Felmly examined Claimant and reviewed imaging studies and X-rays of the cervical, dorsal, lumbar, and pelvis. Dr. Felmly found "no focal evidence of any stenosis on this MRI, a little bit of disc bulge at a couple levels, but otherwise clinical[ly] unremarkable." He observed fairly normal gait, heel-toe reciprocal, straight leg raise unremarkable, upper and lower extremity motor strength 5/5, range of motion for foot, hip, and knees is satisfactory, and sensory dermatomal distribution seems satisfactory. (AR 407). Dr. Felmly concluded that Claimant had "pretty good disc heights up and down the lumbar spine" and the "alignment of her back and structure of the lumbar spine looks appropriate" (AR 408).

### III. Standard of Review

The Court's review of the Commissioner's final decision is limited to: (1) whether substantial evidence supports such decision; and (2) whether the Commissioner applied the correct legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Perales*, 402 U.S. at 401). Substantial evidence is defined as "more than a mere scintilla but less than a preponderance." *Smith v. Chater*, 99 F.3d 635, 637–38 (4th Cir. 1996). The court may not re-weigh the evidence, make credibility determinations, or substitute its judgment for that of the Commissioner, so long as that decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. It is the Commissioner's duty, not the court's, to make findings of fact and resolve conflicts in the evidence. *Id.*; *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979) ("the court does not find facts or try the case *de novo* when reviewing disability determinations"). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the court would decide the case differently. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

### IV. Discussion

The Claimant asks for remand, contending that the ALJ did not "sufficiently" explain: 1) why certain impairments were non-severe; 2 "how the Claimant's activities of daily living indicated she could sustain full-time work;" 3) why she was less than fully credible; and 4) the combined effect of the impairments for purposes of RFC.[9] The Commissioner responds that: 1)

---

[9] *See Saxon v. Astrue*, 662 F.Supp.2d 471, 479 (D.S.C. 2009) (collecting cases emphasizing that a claimant's impairments must be considered both separately and in combination).

the ALJ did not err by not finding additional severe impairments of CTS, asthma, headaches, hypertension, and/or lumbar spine impairment; 2) the ALJ accounted for all of Cliamant's functional limitations that were credibly established in the record when assessing her RFC; 3) based on the evidence as a whole, the ALJ properly discounted the Claimant's subjective complaints; and 4) the additional evidence submitted to the Appeals Council provides no basis for remand. (DE# 15).[10]

Although neither the Claimant nor the Commissioner specifically discuss whether substantial evidence supports the ALJ's finding at step 5, review of the record indicates that remand is appropriate on such basis.

### A. Whether the Commissioner Carried the Step 5 Burden of Showing that Other Work Exists in Significant Numbers in the National Economy that Claimant Can Do

After an ALJ finds that a claimant cannot return to past work, the burden of production shifts to the Commissioner at step five to establish that the claimant can perform other work that exists in the national economy. 20 C.F.R. § 404.1520(f)-(g); *Hunter*, 993 F.2d at 35. To meet this burden, the Commissioner may in appropriate circumstances rely on the Medical–Vocational Guidelines ("Grids"). In appropriate cases, where the Grids establish that a significant number of jobs exist in the economy, the Commissioner need not introduce evidence of specific available jobs. *Heckler v. Campbell*, 461 U.S. 458, 468–70 (1983). The Grids take "administrative notice of available jobs in the national economy." *McLain v. Schweiker,* 715 F.2d 866, 870 (4th Cir. 1983); *and see* SSR 83-10 at *3 ("When the medical-vocational rules were promulgated, administrative

---

[10] The Commissioner points out that the ALJ gave a generous RFC that was more restrictive than the limitations assessed by the state agency physicians. (DE# 15 at 6-7).

notice was taken of the fact that it was possible to identify, at the unskilled level, approximately 200 sedentary occupations").

Reliance on the Grids is appropriate where the claimant suffers primarily from exertional impairments, without significant nonexertional factors. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *and see Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (exclusive reliance on the Grids is appropriate in cases involving exertional limitations).[11] If a nonexertional condition reduces an individual's residual functional capacity to perform sedentary work, it is inappropriate to apply the Grids because the range of jobs available to the impaired claimant is narrower than the grids would indicate. Where a claimant is unable to do a full range of work in an exertional category, the ALJ may not conclusively apply the Grids. 20 C.F.R. Part 404, Subpart P, App. 2.

When a claimant suffers from both exertional and nonexertional limitations, the Commissioner must elicit VE testimony to establish the claimant's ability to perform other work. 20 C.F.R. § 404.1569a; *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989), *reh'g denied* (Oct. 24, 1989) (remanding, observing that the Commissioner must "prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy"). The VE's testimony must be "in response to proper hypothetical questions which fairly set out all of a claimant's impairments." *Id*.

---

[11] An exertional limitation affects the claimant's ability to meet a job's strength requirements, such as sitting, standing, walking, lifting, carrying, pushing, and pulling. 20 C.F.R. § 404.1569a(b). A nonexertional limitation affects the claimant's ability to meet job requirements other than strength requirements. *Id*. Nonexertional limitations would include: difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing; difficulty tolerating dust or fumes; and difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching. *Id*.

The mere presence of a nonexertional impairment does not automatically preclude reliance on the Grids. *See Payton v. Astrue,* Case No. 8:10–cv–2276–DCN–JDA, 2012 WL 630218, *10 (D.S.C. Feb. 10, 2012), *adopted by* 2012 WL 638734 (D.S.C., Feb. 27, 2012). Use of the Grids is foreclosed when the nonexertional impairments further limit the range of jobs available to the claimant. *Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983). The proper inquiry is "whether a given nonexertional condition affects an individual's [RFC] to perform work of which [s]he is exertionally capable." *Payton,* 2012 WL 630218, *10-11 (remanding pursuant to sentence four where the ALJ had limited the claimant to sedentary work, but then reduced the RFC due to "significant limitations in the amount she could stand, walk, lift, carry, reach overhead with the right arm, push/pull, climb, stoop and crouch") (quoting *Smith v. Schweiker*, 719 F.2d 23, 725 (4th Cir. 1984)); *Harrell v. Colvin,* 2014 WL 2093961, *3-4 (S.D.Ala. May 20, 2014) (remanding "Grids" decision due to step five error where claimant was deemed unable to perform entire exertional level). Here, the ALJ found that Claimant had the RFC to do "less than the full range of sedentary work," but there is little discussion in the decision regarding the effect of the nonexertional limitations on Claimant's ability to perform work at the sedentary exertional level. This frustrates meaningful review.

The decision in *Payton* provides a good example. There, the court remanded, indicating "it is unclear what the ALJ meant—the ALJ's conclusion appears to acknowledge the presence of exertional and nonexertional limitations which restrict Plaintiff from performing the full range of sedentary work… [but a] finding that Plaintiff was unable to perform the full range of sedentary work would preclude exclusive reliance on the grids." *Payton,* 2012 WL 630218, at *10-11. There, the ALJ had found that the Claimant's additional limitations had "little or no effect on the occupational base" and concluded Plaintiff was not disabled pursuant to Grid Rule 201.28. The

ALJ provided no reasoning for the assertion that such limitations had "little or no effect on the occupational base," and the court remanded and instructed the ALJ to consider the combined effects of the impairments. *Id*. at *12; *Walker*, 889 F.2d at 49–50 ("the ALJ must adequately explain his evaluation of the combined effects of the impairments").

In the present case, the ALJ elicited testimony from vocational expert Robert E. Brabham, Jr. ("VE"). The ALJ asked a hypothetical question that assumed the sedentary exertional level and incorporated all the restrictions found credible, including that claimant could not climb ladders, ropes, or scaffolds; only occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch, crawl; should avoid concentrated exposure to odors, dust, grease, and fumes, and avoid unprotected heights and dangerous equipment. (AR 50). In response, the VE testified that the Claimant could perform "a full range of sedentary, unskilled work." (*Id*.).

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 CFR §§ 404.1567(a), 416.967(a) (explaining that "[a]lthough a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.").

Although the ALJ asked for representative sedentary jobs within those restrictions, the VE did not testify as to any representative jobs and merely stated "there are jobs." (*Id*.). Such testimony suggests that a Grids decision was assumed. The VE did not provide any specific jobs or any corresponding DOT numbers. In his decision, the ALJ indicated that under the Grids, "if the claimant has the [RFC] to perform the full range of sedentary work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 201.28." (AR 21). The ALJ then indicated in his decision that the VE had "testified that given all of these factors, there would be little or no effect

on the occupational base of unskilled sedentary work." (AR 22).[12] This suggests that the ALJ was making a decision under the Grids.

If the ALJ found that the Claimant's nonexertional limitations did not erode the occupational base of unskilled sedentary level jobs, then the ALJ could properly utilize the Grids as a framework in reaching a decision. However, the ALJ's decision reflects that the Claimant could perform "less than the full range of sedentary work." (AR 17, Finding 5). A finding that a Claimant is unable to perform the full range of sedentary work because of a combination of significant exertional and nonexertional impairments would preclude exclusive reliance on the Grids. In other words, if the ALJ based his decision on Medical–Vocational Rule 201.28, this appears to be error because he specifically found that the Claimant could perform less than the full range of sedentary work. (AR 17, Finding 5). If the ALJ's decision is not based on the Grids, then the step 5 finding does not appear to be supported by substantial evidence because the VE did not testify as to any specific jobs that the Claimant could perform within her restrictions.[13]

Given the above ground for remand, the remaining arguments for remand need not be fully addressed here. However, upon remand, the Commissioner should take into consideration the Claimant's remaining allegations of error.

### B. Remand Under Sentence 4

Remand, rather than reversal, is required when the ALJ fails to explain his reasoning and there is ambivalence in the record, precluding a court from "meaningful review." *Radford v.*

---

[12] The VE did not actually so testify. The ALJ appears to have inferred this from the VE's testimony that under the hypothetical, the Claimant could perform "a full range of sedentary, unskilled work." (AR 50-51).

[13] In discussing RFC, the ALJ also stated that "review of the entire record shows the claimant retains the capacity for unskilled **light** work, within the limitations described above…" (AR 20) (emphasis added). It appears likely that such sentence is a scrivener's error, as the rest of the decision consistently refers to the sedentary exertional level.

*Colvin*, 734 F.3d 288, 296 (4th Cir. 2013); *Ward v. Colvin,* 90 F.Supp.3d 510, 514 (E.D.N.C. 2015). Such is the case here.

Sentence Four authorizes "a judgment affirming, modifying, or reversing the decision ... with or without remanding the cause for a rehearing." *Sullivan v. Finkelstein*, 496 U.S. 617, 625 (1990). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the relevant law. Where the court cannot discern the basis for the ALJ's decision, a remand under sentence four may be appropriate to allow the ALJ to explain the basis for the decision. *See Smith*, 782 F.2d at 1181–82; *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984); *Mascio v. Colvin*, 780 F.3d 632, 636 (2015) (observing that remand may be appropriate where "inadequacies in the ALJ's analysis frustrate meaningful review); *Payton,* 2012 WL 630218, at *10-11 (indicating that under sentence four remand, the ALJ should review the case on a complete record, including any new material evidence).

## V.  Recommendation

Accordingly, it is recommended that, pursuant to sentence four of 42 U.S.C. § 405(g), this matter should be **remanded** for further administrative proceedings.

August 1, 2016
Charleston, South Carolina

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE